May it please the Court, Stephen Rosales on behalf of Plaintiff Appellant Joseph Maher. The simple issue in this case is a discussion between what and how. As the Court's aware, the Social Security Administration must follow a sequential disability analysis. It's a five-step process. The first three steps satisfy a what question. The fourth and fifth steps talk about how. Specifically in this case, the Commissioner at 404-1520-a has instituted a psychiatric review technique when a mental impairment is present. What part of it is, what impairment is there, what kind of rating is the ALJ going to assign to it, and once it's been rated, what is its severity, severe versus non-severe, what listing does that severe impairment, if there is a severe impairment, what listing does that severe impairment meet or equal, and if it doesn't, what residual functional capacity, what limitations arise out of that mental limitation. There's a similar process for physical impairments at 404-1520. It is only until we get to step four or five is the ALJ required to say, now that I've assessed what limitations there exist as a result of the impairments, what effect do they have either on the ability to perform the past work, which is step four, or any other work activity. In this case, the ALJ failed to tell us what impairments arise, I'm sorry, what limitations arise out of the severe mental impairment. What if any? What if any. Correct. They bear, but there must be some simply because once the ALJ has determined that the mental impairment existed, that it was medically determinable, whether it was severe or non-severe as part of that what process, the regulations and rulings say that it still must be considered in assessing the functional capacity, even when it is non-severe. Here it's severe, but regardless of severity, limitations that carry over from the determination of severity must be analyzed in the residual functional capacity. So though we call it severe, though the agency calls it severe, it's actually just more than minimal. So it's actually not severe. It's actually more than minimal effect on ability to do basic work. So that's 404.15.28.42. And then we've said in Smolin v. Chater, this step two is a de minimis screening device. It has to be more than mild or no limitation. So it's called severe, but the way I've always looked at it is more than a hangnail. The better regulation to look at, Your Honor, is 404.15.21, because the commissioner doesn't ever say exactly what severe is, but the commissioner does say what non-severe is at 1521. The commissioner says a non-severe impairment is one that does not significantly affect your ability to perform basic work activity. And common logic would then indicate that if something does not significantly affect, i.e., non-severe, then severe must be something that does significantly affect. But isn't it fair to say that that's sort of a threshold determination just to get us to the next step of the analysis? It's not determinative, is it? Correct. The determination that there is a severe impairment at step two tells us that there is some impairment that imposes some limitations. But what those limitations are aren't developed or aren't articulated until after step three prior to moving on to step four. Well, so in Chupai, we said, yeah, it's okay to rely on the grids, which don't include the non-exertional impairments, even though there is a non-exertional limitation. I think in that case it was mild or moderate depression. So that, by saying you can rely on the grids, which doesn't include that at all, it seems to eliminate the argument that something has to be said merely because they identify it at step two. How do we deal with that? You deal with it because in Chupai, the way you deal with it, Your Honor, I saw it. I'm sorry. Is that in Chupai, the judge, the ALJ, did what I'm asking for this ALJ to do, which is his job. He found, it wasn't clear whether it was separate or a combination, but he found a depressive, I believe, disorder and some other physical impairment. He assessed an RFC assessment, which the Court doesn't articulate exactly, but does hint in the decision that he rated it and found mild and or moderate limitations. And so as part of the functional capacity, he imposed limitations. At step five, the Howe analysis, the ALJ, as is his prerogative, determined that whatever limitations there were as part of the functional capacity assessment didn't affect the world of work at step five and went ahead and applied the grid rules. Here, Chupai can apply because the ALJ, just on the physical limitations in the decision, I believe that's on page 300 or 301 of the Administrative Record, said that the physical limitations themselves impede the ability to perform work activities such that the grid rules aren't applicable and I must bring in a vocational expert, which he did. And so Chupai couldn't apply because the ALJ ---- Because if you could use the grids and rely on them, which doesn't include that at all, the clear inference is that's not an error. But he couldn't rely on the grids, Your Honor, because he had ---- But in Chupai ---- Oh, in Chupai ---- Right. In Chupai, can an ALJ say there is a severe mental problem, a severe physical problem, assess an RFC that imposes both physical and mental limitations, and then when applying it to the step five analysis, determine that whatever limitations there are do not significantly affect the ability to perform work? Yes, but that's the ---- But here's the problem with your argument. In Chupai, the grids were used. Correct. And the grids cannot be used if there is a mental impairment that affects the residual functional capacity. No, that's not what Chupai said. Chupai said that the grids can only ---- Okay. Whether it's physical, pain, or some other limitation, non-exertion, that doesn't encompass it. It allows an ALJ to say I've determined that these limitations that exist in the RFC don't significantly erode the occupational values at step five that requires me to not use the grids. Right. But we have other cases that say if the ---- if the mental impairment is such that it significantly impairs the ability to do past relevant work, or work that exists in the economy, grids cannot be used, but you have to use a vocational expert. Correct. Right? So by implication, that means that if the grids can be used, that the finding, the threshold, what I call the threshold finding doesn't necessarily dictate that the residual functional capacity has to include the mental health impairment. It does, Your Honor, because what you want to do is, and I apologize, because a lot of ALJs want to do this, you don't want to do a sequential analysis. If it's sequential ---- I thought they were required to do one, right? Exactly. They go through the step. Right. So if it ---- if I may finish, Your Honor. Sorry. If it's sequential, then whatever comes at step four or five doesn't matter until you assess the RFC. You don't get to say as an ALJ, well, his past work didn't really involve talking to people, so I'm just going to go ahead and leave out that don't talk to people limitation, because then you're jumping ahead, cherry picking what you think might be appropriate, and then backtracking to the RFC. I don't understand that. I don't understand what you're arguing. I mean, if the RFC is supported by substantial evidence, then we have to uphold it. And so the fact that whether or not he put in something related to or specifically mentioned something related to the mental impairments isn't an error under our case law, unless you have a case, which I didn't see a case, that says if you find a mental limitation at step two, then it's an error not to include it in the RFC. And I didn't see a case that said that, and HOOPAI seems to say the opposite. So do you have a case that says that? I have regulations that say that, Your Honor. But do you have a case that interprets them? Because we have case law going the other way. No case has ever held that the regulations are wrong, that the RFC must include the limitations arising out of the severe impairments of singly. Right. But we have cases saying that you don't, that it wasn't an error. So what do we do with that? They don't say that, Your Honor. They say that the RFC properly considered with both physical and mental limitations at step five in the HOOPAI case didn't matter at step five. But they didn't say that the ALJ would have been proper not to include the limitations. The problem is that after the determination of a minimal of the threshold determination of mental impairment, then the IJ looks to the actual records of the treating physicians, the consulting physicians, to determine what is the extent of the mental impairment. The ALJ said in her opinion at the bottom of 299, now that I've rated the severity and now that I've determined that the limitations don't meet or equal the listings, she specifically stated at the very bottom of that last sentence, I will now translate these findings and incorporate them into my residual functional capacity below. Translation means you take something and turn it into something else, like the Stubbs-Danielson case. There were various moderate limitations. It was translated into a specific consistent finding at step five, at the RFC step, and then applied at step five. Here the ALJ never translated, even though she said she was going to, which supports my argument that the ALJ is consistently reading the regulations the same way I am, which is 1520A says is it severe? Does it meet the listings at step three? And if it doesn't, what limitations arise out of the RFC? All right. Counsel, we understand your argument. We'll give you a minute for rebuttal. Thank you, Your Honor. We'll hear from the government. Thank you. Good morning. Shea Bond on behalf of the Commissioner of Social Security. Your Honors, HUPAI controls the outcome of this case. I really can't think of a case that really almost meets on all fours with the fact pattern that's presented today, in today's case, and with the issue presented. We had a, in both HUPAI and the claimant here today, they both had a combination of severe physical and mental impairments. In both instances, the RFC was for light work. I do disagree with counsel's characterization of the RFC and HUPAI as specifically including mental limitations. I believe that was the whole point of the HUPAI case was that once finding a severe mental impairment, the allegation was that the ALJ had not accommodated the non-exertional mental limitations in the RFC, and particularly when that RFC was considered at step five. The ALJ, both in HUPAI and the case today, found that the claimant was capable of performing unskilled work, and that did accommodate the mental limitations in HUPAI, as it does incorporate the mental limitations in the case that we're discussing today. Counsel and a plaintiff have not distinguished their case from HUPAI, and HUPAI should control the outcome. The ALJ did everything proper here. He analyzed the evidence. He reached the proper, excuse me, she reached the proper determination that the claimant here, based on the mental impairment, could perform unskilled work in significant numbers in the national economy. If this Court has any questions, I'll be happy to address them, but I really do think that HUPAI is just the seminal case. Any questions? It appears not. Thank you. Rebuttal. HUPAI doesn't control because it was a step five case. The ALJ assessed an RFC which, if you read the decision, appears to ‑‑ I've actually read the ALJ decision because I had a copy from the attorney that did the case, but that's besides the point. The ALJ found both mental, physical, the full range of light, and mental limitations and then decided at step five how that impacts. The Stubbs‑Danielson case that's been cited in this brief, the Bray case, as well as HUPAI, all are step five cases because the ALJ did the job he was supposed to, assess the RFC based on the combination of impairments, impose exertional and or non‑exertional impairments arising out of that in the RFC, and then say how does it affect the ability at step four or five. That's what HUPAI is about, step five. All Mr. Mayer wants is the same thing. Counsel, you are stepping away from the mic when you speak. I apologize, Your Honor. And it's hard to hear you. I apologize, Your Honor. All Mr. Mayer wants is the same thing that Mr. HUPAI, or Ms. HUPAI, if I may, or Mr. ‑‑ sorry, the claim in HUPAI got that Bray got and that Stubbs‑Danielson got, which is to have the ALJ assess the RFC correctly. If the ALJ wasn't supposed to include any limitations in the RFC, then why did she say she was going to at the bottom of her decision in 299? Because that's what the regulations say she has to. Well, opposing counsel says she did that by incorporating the extent of mental impairment in determining that he was able to perform unskilled work. Your Honor, before you get there, whether they're mild, whether they're severe, moderate, if there's some limitations, the ALJ here found some moderate limitations in the ability to perform social functioning as well as some mild limitations in concentration, persistence and pace. Right. Isn't that indicative of the consideration of the mental impairment? No, because that was at step three. And then the ALJ said I'm going to take these broad categories and perform a detailed assessment and include that assessment in my RFC. All right. We understand your argument. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel. The case that's argued is submitted for decision by the court.
judges: Hug, Rawlinson, Ikuta